**UNITED STATES of America, Appellee,**

v.

**Robert LORGE, aka Bobby, Defendant–Appellant.**

**Docket No. 98–1138**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1998.

Decided Feb. 2, 1999.

---

Jay L. Weiner, Brooklyn, New York, for Defendant–Appellant.

Stephen C. King, Assistant United States Attorney for the Eastern District of New York (Zachary W. Carter, United States Attorney, David C. James, Assistant United States Attorney, of counsel), Brooklyn, New York, for Appellee.

Before: WINTER, Chief Judge, JACOBS, and POOLER, Circuit Judges.

WINTER, Chief Judge:

Robert Lorge, Jr. appeals from a sentence imposed by Judge Wexler after Lorge pleaded guilty to transmitting child pornography via computer in violation of 18 U.S.C. § 2252(a). Judge Wexler determined that Lorge's Sentencing Guidelines offense level was 27 and his sentence range was 70–87 months imprisonment, in part because he found Lorge's offense involved the distribution of child pornography. *See* U.S.S.G. § 2G2.2(b)(2). Lorge contends that the distribution enhancement should not have been applied to him because his crime was not committed for "pecuniary gain." We affirm.

The conduct upon which Lorge's guilty plea was predicated is not in dispute. Using the Internet, Lorge exchanged with other people digitized photo images of illegal sex acts involving children. On January 8, 1997, an undercover agent sent an e-mail message to Lorge, offering to "trade" videos depicting child pornography for photographs of the same. Over the next day, he and Lorge exchanged messages discussing the terms of their "trade." The agent stated that he sought "something like 50 pix [sic] per feature." On January 9, 1997, Lorge agreed to send image files to the agent in return for the agent's agreement to send to him videos depicting intercourse and sodomy with children, writing "[It] sounds like we have a deal!!" (exclamations in original). However, later in the same e-mail message, Lorge wrote:

> Even if you run out of movies to send me, which you might since I have many many pics, ill [sic] still continue sending em, because your [sic] are really doing me a solid, my friend, so extra pics to you dont [sic] bother me at all. . . .

To clarify his preference with respect to the videos he was to receive, Lorge wrote, *inter alia*, "the younger the better." Over the next few weeks, Lorge sent the agent approximately 250 digitized images explicitly depicting a wide range of sex acts involving children.

On February 7, 1997, Lorge was arrested. A search of his home revealed that he was in possession of about 2,500 graphic image files that constituted child pornography. In his confession, he admitted sending such material over the Internet. He also produced two pornographic videotapes involving children that he had received from a Canadian with whom he had exchanged illicit material. On April 6, 1997, a grand jury returned a single count indictment charging that Lorge "did knowingly and intentionally transport in interstate and foreign commerce, by computer, visual depictions" of child pornography.

Following Lorge's guilty plea, the Probation Department prepared a presentence report ("PSR") that calculated Lorge's Guidelines offense level, after enhancement for offense characteristics and reduction for acceptance of responsibility, as 27. *See* U.S.S.G. §§ 2G2.2(b) (specific offense enhancements), 3E1.1 (reduction for acceptance of responsibility). After Lorge challenged, *inter alia,* the five-level enhancement for distribution applied pursuant to Section 2G2.2(b)(2), the Probation Department by addendum noted: "the defendant was to send fifty pictures, which the agents advise have no value, to an undercover agent in exchange for a video, which has a value of $50. With this agreement, the defendant would have realized a pecuniary gain of $50." At Lorge's sentencing hearing, the district court adopted the findings in the PSR.

■ Lorge contends on appeal that he is not eligible for enhancement pursuant to Section 2G2.2(b)(2) because that provision applies only to exchanges made for "pecuniary gain". Lorge further argues that the facts cannot support a finding that he transmitted images for pecuniary gain. Finally, he argues that, even if the facts might support that conclusion, the district court did not make such a finding, leaving the risk that it sustained the enhancement because it believed that Section 2G2.2(b)(2) does not require a finding of pecuniary gain. Because we disagree with Lorge's major premise—

that Section 2G2.2(b)(2) requires a motive of "pecuniary gain"—it is irrelevant that the district court did not find that Lorge sought a pecuniary gain.

Guidelines Section 2G2.2(b)(2) provides:

If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels.[1]

Application Note 1 provides that the term "distribution" as used therein "includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." U.S.S.G. § 2G2.2, Application Note 1. Application Note 2 to Section 1B1.1 provides, *inter alia,* that as used throughout the Guidelines, "[t]he term 'includes' is not exhaustive." *Id.* § 1B1.1, Application Note 2.

■ We review a district court's interpretations of the Guidelines *de novo. See United States v. Adler,* 52 F.3d 20, 21 (2d Cir. 1995) (per curiam).

The language of the Guidelines makes clear that the definition of "distribution" in Section 2G2.2(b)(2) is not limited by Application Note 1 thereof to acts for "pecuniary gain." Because Section 1B1.1 states that the term "includes" is not exhaustive, the language of Application Note 1 quoted above is most easily read as intended to avoid an overly narrow reading of distribution that excluded acts ancillary to sales, such as transportation. Moreover, the structure of Section 2G2.2 also supports the inference that a motive of pecuniary gain need not be shown. Subsection (b)(2) provides for an enhancement "[i]f the offense involved distribution." The ordinary meaning of distribution involves an act or series of acts without regard to the actor's motive. *See* Webster's Third New International Dictionary, at 660 (unabridged 1981) (defining "distribution" as, *inter alia,* "a spreading out or scattering over an area or throughout a space"); *Unit-*

---

1. Section 2F1.1, which applies to offenses involving fraud or deceit, provides for offense-level enhancement based, *inter alia,* on the monetary loss caused by the defendant. *See* U.S.S.G. § 2F1.1(b)(1). It contains a table that sets forth incremental offense-level enhancements for loss levels ranging from "$2,000 or less" (no increase) to "[m]ore than $80,000,000" (increase by 18). *Id.*

ed States v. Kimbrough, 69 F.3d 723, 734 (5th Cir.1995) ("A[n Internet] bulletin board system is designed to distribute and receive files.") Application Note 1, which provides, *inter alia,* that the term distribution "includes any act related to distribution for pecuniary gain," makes clear that when the profit motive is present, not only "distributions," as the term is commonly understood, but also "any act" related thereto, "including production, transportation, and possession with intent to distribute," suffices to sustain the enhancement. *See United States v. Canada,* 110 F.3d 260, 263 (5th Cir.) (per curiam) ("Distribution" as used in Section 2G2.2 "is meant to be inclusive of pecuniary gain purposes, but not exclusive of all other purposes."), *cert. denied,* —— U.S. ——, 118 S.Ct. 195, 139 L.Ed.2d 133 (1997); *Kimbrough,* 69 F.3d at 734–35 (affirming distribution enhancement despite "no evidence to show [defendant] had actually engaged in a commercial distribution of the pornography").

Appellant's contention that Application Note 1 limits the term "distribution" to acts taken for "pecuniary gain" is simply untenable. If that were in fact the Guidelines intention, Section 2G2.2(b)(2) need only have provided for enhancement if the crime involved "distribution for pecuniary gain." It is no response that the Application Note would even then be needed to clarify that "any act" related thereto suffices to sustain the enhancement, because the Note could then provide (clearly) that " 'distribution for pecuniary gain' includes any act related [thereto]." Moreover, the fact that Section 2G2.2(b)(2) cross-references the table in Section 2F1.1 setting forth incremental offense-level enhancements based on the amount of monetary loss does not support appellant's argument. That table sets forth incremental offense-level enhancements for loss levels ranging from "$2,000 or less" (no increase) to "[m]ore than $80,000,000" (increase by 18). U.S.S.G. § 2F1.1(b)(1). Section 2G2.2(b)(2) expressly modifies the reference to this table by providing that the minimum enhancement for offenses involving distribution shall be 5 levels. The purpose of the reference to the table in Section 2F1.1 is clearly to provide for increased distribution enhancements tied to the value of the distributed material, not to modify the meaning of the term "distribution." To the extent that *United States v. Black,* 116 F.3d 198 (7th Cir.), *cert denied,* —— U.S. ——, 118 S.Ct. 341, 139 L.Ed.2d 264 (1997), supports appellant's argument on this issue, we decline to follow that decision. *Cf. id.* at 202–03 (defining "distribution" narrowly to require "transaction for pecuniary gain," but defining "pecuniary gain" broadly, to include "the possibility of swaps, barter, in-kind transactions, or other valuable consideration").

 Because Lorge transferred graphic images of child pornography to other individuals, he engaged in "distribution" within the meaning of Guidelines Section 2G2.2(b)(2). We therefore affirm.