PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13 2000
THOMAS K. KAHN
CLERK

_____

No. 99-4123

_____

D.C. Docket No. 98-08113-CR-WDF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC SCOTT PROBEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 13, 2000)**

Before COX, Circuit Judge, HILL and MESKILL[*], Senior Circuit Judges.

MESKILL, Senior Circuit Judge:

_____

[*] Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

Defendant-appellant Eric Scott Probel pled guilty to one count of transporting or shipping child pornography in violation of 18 U.S.C. § 2252A(a)(1). At sentencing, he objected to the application of a five-level sentence enhancement for "distribution" of child pornography pursuant to U.S.S.G. § 2G2.2(b)(2). The United States District Court for the Southern District of Florida, Ferguson, J., overruled the objection, finding that the plain language of the guideline did not, as Probel argued, require that the defendant receive pecuniary or other gain. On appeal, Probel renews his contention that application of the enhancement must be predicated on a finding that he received some pecuniary or other benefit. For the reasons that follow, we disagree. Probel, who does not contest that he "distributed" child pornography in the ordinary sense of the term, was appropriately sentenced.

## BACKGROUND

On June 15, 1998, a law enforcement officer using the name "suzyQ17" was patrolling an Internet chat room entitled "#0!!!!!!!!13yearoldgirlsex." "suzyQ17" entered into a private discussion with Probel, who was using the screen name "sophie^^." Probel asked if "suzyQ17" wanted to trade personal pictures. "suzyQ17" responded that, due to a computer malfunction, "she" would not be able to send any pictures, but was interested in receiving some. Probel responded by

2

asking if "suzyQ17" "like[d] young." The officer responded affirmatively and Probel sent some pictures. The pictures depicted young boys and girls engaged in various sexual acts. Probel continued to send more pictures despite "suzyQ17"'s inability to reciprocate. The discussion lasted approximately two hours and became very sexual in nature.

Based on the Internet discussion and Probel's pictures, law enforcement officers obtained a warrant to search Probel's computer and home. The search took place on July 14, 1998. It turned up over 800 pornographic pictures stored on floppy disks and on the hard drive of Probel's computer. According to an expert, approximately 200 of these pictures involved persons under the age of 18 and sixteen involved children under the age of 12. After being advised of his rights, Probel admitted that he owned the pictures and that he had sent pictures via the Internet on ten to twenty previous occasions.

On August 25, 1998, a grand jury indicted Probel on five counts of transporting or shipping child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1), and one count of possessing a computer disk with three or more images of child pornography that had been transported in interstate commerce by computer, in violation of 18 U.S.C. § 2252A(a)(5)(B). Probel was arrested three days later. On October 28, 1998, pursuant to a written plea

3

agreement, Probel pled guilty to one count of transporting or shipping child pornography.[1]

On January 8, 1999, the district court held a sentencing hearing. Probel objected to the Pre-Sentence Investigation Report's determination that he should receive a five-level enhancement for "distribution" of child pornography. He argued that the enhancement was not applicable because he did not receive any pecuniary or other benefit in return for the pictures. He did not dispute that he "distributed" pictures in the ordinary sense of the term. At the close of the hearing, the district court determined that the enhancement did not require a finding of pecuniary or other benefit. It did not make any factual findings as to whether Probel received any benefit, pecuniary or otherwise. It interpreted "distribution" to mean "to disseminate, or circulate or to send." Accordingly, the district court applied the five-level sentence enhancement. This enhancement, and other adjustments which are not at issue here,[2] raised Probel's offense level from a base

_____

[1] 18 U.S.C. § 2252A(a)(1), to which Probel pled guilty, provides penalties for: "(a) Any person who – (1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography." 18 U.S.C.A. § 2252A(a)(1) (Supp. 2000).

[2] Specifically, Probel received a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(1), because the material involved minors under the age of 12, a four-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3), because the material portrayed sadistic or masochistic conduct, and a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(4), because a computer was used in the transmission of the material. These enhancements, coupled with the five-level enhancement for "distribution" at issue here, and a three-level reduction for acceptance of responsibility, resulted in an offense level of 27.

offense level of 17 to 27. Probel was sentenced to 70 months in prison, at the low end of the Guidelines range, followed by three years of supervised release and a $100 special assessment.

## DISCUSSION

The only issue on appeal is whether the application of U.S.S.G. § 2G2.2(b)(2) requires that the defendant receive some pecuniary or other benefit. In <u>United States</u> v. <u>Garrett</u>, 190 F.3d 1220 (11th Cir. 1999), this court held that the application of U.S.S.G. § 2G2.2(b)(2) was proper after finding that the defendant had received "what he considered to be another `valuable gain.'" <u>Id</u>. at 1223. The court did not address whether the enhancement would have been proper in the absence of a finding that the defendant received a benefit. In that respect, this is a case of first impression in this Circuit. Whether U.S.S.G. § 2G2.2(b)(2) requires pecuniary gain has created a split among the Circuits with the Seventh and Ninth Circuits holding that pecuniary gain, albeit defined broadly, is required, while the Second, Fifth, Sixth and Eighth Circuits have stated that pecuniary or other gain is not required. We now join the majority of courts to consider the issue and hold that, based on the plain language of the Guidelines and the application notes, pecuniary or other gain is not required for the enhancement to apply.

The district court did not make any findings as to any benefit to Probel, instead basing its decision on the plain language of the Guidelines and the ordinary meaning of the term "distribution." We must determine whether the court correctly interpreted the Guidelines. We review its interpretation de novo. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir. 1999).

We begin our analysis with the Guidelines language. U.S.S.G. § 2G2.2 is entitled "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic," and provides for a base offense level of 17. Under "Specific Offense Characteristics," U.S.S.G. § 2G2.2(b)(2) provides: "If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels." The table in § 2F1.1 provides for increased offense levels dependent on the loss due to fraud. According to the table, the retail value of child pornography must exceed $70,000 to warrant an enhancement greater than the threshold five-level enhancement prescribed in U.S.S.G. § 2G2.2(b)(2). Although the term "distribution" is undefined, Application Note 1 to U.S.S.G. § 2G2.2 provides: "`Distribution' includes any act related to distribution for pecuniary gain,

6

including production, transportation, and possession with intent to distribute." Significantly, Application Note 2 to U.S.S.G. § 1B1.1, providing for general application principles, provides: "The term `includes' is not exhaustive." Application notes are binding on this court. See Stinson v. United States, 508 U.S. 36, 38 (1993).

Because the term "includes" is not exhaustive, it is clear that "the definition of `distribution' in Section 2G2.2(b)(2) is not limited by Application Note 1 thereof to acts for `pecuniary gain.'" United States v. Lorge, 166 F.3d 516, 518 (2d Cir.), cert. denied, 119 S.Ct. 1372 (1999). Giving Application Note 1 its most natural reading, it actually enlarges, rather than limits, the applicability of the enhancement. In addition to defendants who distribute child pornography, Application Note 1 makes clear that individuals who are indirectly involved in distribution for profit, such as producers and transporters, are also subject to the enhancement. It was drafted to expand liability to cover these other individuals and should not be understood to limit the application of the enhancement to exclude individuals like Probel. See id. ("Application Note 1 . . . is most easily read as intended to avoid an overly narrow reading of distribution."). Thus, the term "distribution" should be given its ordinary meaning of "to dispense" or "to give out or deliver." See Webster's Third New International Dictionary 660 (1981).

Our conclusion that "distribution" should be given its ordinary meaning based on the plain language of the guideline accords with the majority of circuits to consider the issue. In Lorge, the Second Circuit held that "it is irrelevant that the district court did not find that Lorge sought a pecuniary gain," because "a motive of pecuniary gain need not be shown." Lorge, 166 F.3d at 518. The court applied the ordinary meaning of "distribution" "without regard to the actor's motive" and expressly declined to follow contrary authority. Id. at 518-19. It refused to look beyond the plain meaning of the guideline, because if a requirement of pecuniary gain was intended, "Section 2G2.2(b)(2) need only have provided for enhancement if the crime involved `distribution for pecuniary gain.'" Id. at 519. We are likewise persuaded that it is unnecessary to look beyond the plain meaning of the guideline. If the Sentencing Commission had intended pecuniary gain to be required, it could easily have substituted "means" for "includes" in Application Note 1 to limit the term "distribution." See United States v. Horn, 187 F.3d 781, 791 (8th Cir. 1999) ("If Congress had intended § 2G2.2(b)(2) to apply only to distribution for pecuniary gain, it could easily have said so directly.").

In addition to Lorge, the Fifth, Sixth, Eighth and Eleventh Circuits, in dicta, have stated that pecuniary gain is not required for the enhancement to apply. In each of those cases the district courts found that the defendant had received some

benefit. From this fact, Probel argues, contrary to the stated dicta, that such a finding is a prerequisite to the five-level enhancement. However, these decisions were not compelled by the finding of a benefit to the defendant. Instead, each case was based on the plain meaning of the guideline. Simply because there was an additional element present in the case does not mean that that element was required.

In the leading case, United States v. Canada, 110 F.3d 260 (5th Cir. 1997), the Fifth Circuit held that "[t]he plain meaning of [Application Note 1] unambiguously indicates that the intended definition of `distribution' for the sake of the guideline is meant to be inclusive of pecuniary gain purposes, but not exclusive of all other purposes." Id. at 263. Because the district court had found that the defendant had "distributed the material for the purpose of enticing the thirteen-year-old minor to have sex with him," the court did not need to decide whether the enhancement would be appropriate in the absence of some form of benefit. Id. at 263 n.4.

Similarly, in United States v. Hibbler, 159 F.3d 233 (6th Cir. 1998), cert. denied, 119 S.Ct. 1278 (1999), the Sixth Circuit held that "the enhancement . . . is not limited to instances involving distribution for pecuniary gain." Id. at 237-38. The court followed Canada's reasoning that the plain language of the guideline

9

dictated its result. Id. at 237 (quoting Canada, 110 F.3d at 263). Hibbler, like Canada, involved evidence that the defendant had received a benefit for his distribution of the child pornography. This court, in Garrett, also agreed with the approach taken in Canada that the enhancement "is not limited to transactions for pecuniary gain." Garrett, 190 F.3d at 1223 (discussing Canada). It was unnecessary to decide whether the enhancement would have been appropriate in the absence of any benefit because the defendant had distributed child pornography "in order to receive what he considered to be another `valuable gain,'" namely, for the purpose of enticing another to have sexual relations with him. Id. Finally, in Horn, the Eighth Circuit gave "the word `distribution' . . . its usual meaning in ordinary language," finding that "`distribution' includes, but is not limited to, transactions for pecuniary gain." Horn, 187 F.3d at 791 (citing Lorge, Hibbler and Canada). In Horn, the defendant had been found to have engaged in trade or barter and the enhancement was affirmed.

We agree with the reasoning of these decisions and the holding of Lorge that the plain language of the guideline does not limit "distribution" to instances of pecuniary or other gain. Nevertheless, Probel asks us to look beyond the plain language of the guideline to find that the enhancement requires pecuniary or other gain. He presents two arguments. First, he argues that the reference to the fraud

10

table in U.S.S.G. § 2F1.1 demonstrates that the Sentencing Commission intended the enhancement to be limited to situations involving pecuniary gain. A contrary finding, according to Probel, would mean that an individual who gratuitously gave his neighbor a single, valueless item of child pornography would be punished the same (a five-level increase) as a commercial distributor responsible for $69,999 of child pornography. He finds this result to be untenable. Second, he argues that "distribution" is already taken into account in determining the base offense level. Thus, it would be inappropriate to further enhance his sentence where the enhancement follows automatically from the offense.

Probel finds support for his position from decisions of the Seventh and the Ninth Circuits. In United States v. Black, 116 F.3d 198 (7th Cir. 1997), the Seventh Circuit held that pecuniary gain was required before the enhancement could be applied. The court found, "[m]ost importantly, § 2G2.2(b)(2) measures the number of levels of an enhancement by the `retail value of the material,' which implies a transaction for pecuniary gain." Id. at 202. The court noted that "pecuniary gain is a broad concept itself, and it does not exclude the possibility of swaps, barter, in-kind transactions, or other valuable consideration." Id. at 202-03.

In United States v. Laney, 189 F.3d 954 (9th Cir. 1999), the author, writing for a divided Ninth Circuit panel, held that "`distribution' . . . requires an element

11

of pecuniary gain." Id. at 959. Like the Black Court, the opinion stated disbelief that the Sentencing Commission would distinguish "between a commercial pornographer who sells $40,000 worth of material and one who sells $80,000 worth, but not between a person who gives away a magazine and one who markets $40,000 worth of magazines." Id. at 960. The opinion also found significant the "overall punishment scheme laid out in section 2G2.2." Id. Section 2G2.2 encompasses six types of offenses: trafficking, receipt, transportation, shipping, advertising, and possession with intent to traffic in material involving the sexual exploitation of a minor. The opinion states, "only those offenders who merely received or advertised child pornography could receive the base level offense; all the other offenses covered by section 2G2.2 would qualify automatically for the five-level increase." Id. at 960-61. The author apparently believed that an additional element beyond mere distribution was required so that the enhancement would not be automatic in most of the cases covered by the guideline. Based on these arguments, the opinion concluded that pecuniary gain, albeit defined broadly, was required for the five-level enhancement and affirmed the district court's application of the enhancement based on the finding that the defendant had distributed child pornography for pecuniary reasons. See id. at 961-62. One panel member specially concurred in the result, but did not agree that pecuniary gain was

12

required for the application of the enhancement. See id. at 967-68 (Nelson, J., specially concurring). Another panel member agreed that pecuniary gain was required, but dissented on the ground that pecuniary gain should be limited to instances of economic benefit. See id. at 969 (Reinhardt, J., concurring in part and dissenting in part).

We do not believe that it is necessary to look beyond the plain meaning of the guideline. The arguments raised by Probel, drawn from Black and Laney, do not convince us that "distribution" should be limited to instances of pecuniary or other gain. The reference to the fraud table does not limit the application of the enhancement to individuals who receive a pecuniary benefit from the distribution of child pornography. The guideline itself makes clear that individuals who do not distribute child pornography for gain are to be given the threshold five-level increase. "The purpose of the reference to the table in Section 2F1.1 is clearly to provide for increased distribution enhancements tied to the value of the distributed material, not to modify the meaning of the term `distribution.'" Lorge, 166 F.3d at 519. The threshold five-level enhancement is appropriate, where, as here, "no actual `sale' takes place and hence the value of the materials distributed is not easily ascertainable." Hibbler, 159 F.3d at 238. Any distribution of child pornography, gratuitously or for profit, results in the continued exploitation of the

13

victims depicted in the images. Therefore, we do not find problematic the Sentencing Commission's decision to treat individuals like Probel in the same manner as individuals who distribute $69,999 worth of child pornography. The guideline distinguishes between larger retailers for the purpose of imposing stricter sentences. This does not suggest that small retailers or gratuitous distributors should not be subject to an enhancement.

We do not believe that the structure of the guideline compels a result different from the one we reach. "The base offense level takes into account the possession or receipt of child pornography," while the enhancement is only available for "distribution." See Hibbler, 159 F.3d at 238. Individuals who only receive or advertise child pornography, absent any distribution, would not receive the enhancement. The enhancement, contrary to Probel's contention, is not automatic.

We are required to apply the language employed by the Sentencing Commission which compels the result we reach today. Probel "distributed" child pornography within the ordinary meaning of the term. Nothing in the guidelines suggests that the term should be limited to instances of pecuniary or other benefit. Probel's sentence was correctly enhanced five levels pursuant to U.S.S.G. § 2G2.2(b)(2).

## CONCLUSION

The district court's judgment is AFFIRMED.