RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 12-1427

THEODORE COOPER STEWART,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cr-20436-1—David M. Lawson, District Judge.

Argued: June 19, 2013

Decided and Filed: September 3, 2013

Before: GILMAN, GRIFFIN, and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Richard D. Korn, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Richard D. Korn, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge. Defendant Theodore Stewart appeals his convictions by a jury of two counts of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1). Stewart argues that he should not have been indicted in this case because the district court erred in dismissing a previously filed indictment without prejudice, rather than with prejudice, upon finding a Speedy Trial Act violation in that earlier case; the district court erred in denying his motion to suppress and motion for judgment of

acquittal; and the district court committed plain error by admitting two of the government's exhibits and by not, sua sponte, instructing the jury on the statutory definition of an "identifiable minor." We disagree and affirm.

I.

On May 12, 2009, defendant Stewart arrived at the Detroit Metropolitan Airport on a plane from Japan. In his possession were two laptop computers, a Sony and a Twinhead. Customs and Border Protection ("CBP") Officer Marvin Steigerwald randomly approached Stewart in the international baggage claim area and began asking him questions about his passport and declaration sheet. Steigerwald characterized Stewart's responses as "standoffish" and "confrontational." Based on these "potentially suspicious" responses, Steigerwald directed Stewart to a secondary inspection area where he could ask him additional questions and search his luggage and computers before clearing customs.

Steigerwald attempted to search the Twinhead computer, but could not because he did not have the means to power-up the laptop, which had a dead battery and required a foreign power cord converter. While searching the Sony computer, Steigerwald found about a dozen thumbnail images of nude children, approximately ten years of age, that he believed to be child pornography. Steigerwald stopped the search and called Immigration and Customs Enforcement ("ICE") Agent Andre Young to assist. Young agreed with Steigerwald's assessment and told Stewart that they were detaining his laptops for further examination, but he was free to leave. Stewart then boarded a flight to Maryland, but his computers remained with Young. Later that day, at around 4 or 5 p.m., Young transported Stewart's two computers to ICE's main office in downtown Detroit—about twenty miles away from the airport—so that they could be further examined.

ICE Agent Joshua Edwards, a certified forensic analyst, searched the Twinhead laptop the next day. Edwards did not perform a forensic examination of the computer; instead, he only previewed its contents by scrolling through about twenty-five images per page, searching for contraband. His search revealed images that he believed to be

child pornography.  Edwards stopped the search and informed Young of his findings. Five days later, Young obtained a search warrant for both the Sony and the Twinhead computers.

After Young secured the search warrant, Edwards began a forensic examination of Stewart's computers.  Edwards found a variety of images on both machines and divided them into three categories:  (1) personal; (2) "child erotica," which he defined as "children posed in—possibly sexually positioned and some of the children are naked and pictures that may not quite necessarily be child pornography, but are still inappropriate pictures of children"; and (3) suspected child pornography, which he defined as an image focused on the genital area of a naked child.

On September 8, 2009, in Case No. 09-20415, a grand jury charged Stewart with one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1).  On February 5, 2010, Stewart filed a motion to suppress all evidence obtained from his computers at ICE's Detroit office, arguing that he was subjected to an "extended border search," without reasonable suspicion, in violation of the Fourth Amendment.  On March 18, 2010, the court held a hearing on the matter and took the motion under advisement.  On May 24, 2010, the district court denied the motion, holding that although Stewart's computers were subjected to an "extended border search" while at ICE's Detroit office, the government had reasonable suspicion for the search based on the images Steigerwald and Young found during their search of the Sony computer at the airport.

On the same day that the district court denied his motion to suppress, Stewart filed a motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161.  He argued that his June 15, 2010, trial date, set in the court's order denying his motion to suppress, meant that he would not be brought to trial within seventy non-excludable days from the date of his indictment, the latest date under that period being May 24, 2010.  The district court agreed, noting that its CM/ECF Speedy Trial Act calendaring program mistakenly calculated a trial date outside the statutorily required period because it kept Stewart's motion to suppress under advisement—and therefore

excluded from the speedy-trial clock—for sixty-seven days, when it should have excluded only thirty of those days under 18 U.S.C. § 3161(h)(1)(H). The court then determined that Stewart's speedy trial motion, filed on the last non-excludable day of the seventy days allowed for bringing an indicted defendant to trial, did not toll the speedy-trial clock because under *United States v. Tinklenberg*, 579 F.3d 589, 598 (6th Cir. 2009), aff'd on other grounds by 131 S. Ct. 2007 (2011), it did not actually cause or threaten any delay in the trial scheduled to begin two weeks later. As a result of the Speedy Trial Act violation, the court dismissed the indictment without prejudice on June 14, 2010.

One month later, in Case No. 10-20436, a grand jury returned a new indictment (and later a superceding indictment), charging Stewart with two counts of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1). The five images charged in count one were found on the Sony computer and the eight images charged in count two were found on the Twinhead computer.

The evidence at trial showed that the images charged in count one were downloaded from the internet and included one image that "appeared to be a female child's vagina under the age of 18 with a male genitalia in close proximity to the child's vagina" and another that "appeared to be a closeup of the genitalia of a female child." Many of the images charged in count two were cropped from images of naked children playing at a beach, so that the cropped image focused solely on the female genitalia of the naked, or nearly naked, child in the original image. In other instances, the original images had been brightened with photo-editing software to such an extent that it distorted the background and made the genitalia of the naked children more visible. The parties agreed that the original images from which the cropped and brightened images were created did not meet the federal definition of child pornography. The original images, taken from afar, were of little girls bathing on a beach in the nude.

During the trial—without objection from Stewart—the district court admitted the government's Exhibits 15 and 16 into evidence, which were image compilations created from those found on Stewart's computers. Edwards testified that Exhibit 15 contained

216 images of what he characterized as child erotica, and Exhibit 16 contained 182 images of naked children that he characterized as child pornography.

After the government rested, Stewart made an oral motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing, among other things, that the First Amendment protected the charged images and that the cropped images charged in count two should not be considered child pornography because those images were not, as a matter of law, "lascivious" exhibitions of a child's genitals under 18 U.S.C. § 2256(2)(A)(v). The district court denied the motion from the bench and submitted the case to the jury. The jury found Stewart guilty with regard to the two images described above charged in count one and all of the images charged in count two.

Stewart renewed his Rule 29 motion and filed a motion for a new trial in which he argued, in pertinent part, that the district court plainly erred by admitting Exhibits 15 and 16 and by not, sua sponte, instructing the jury on the statutory definition of an "identifiable minor" as used in 18 U.S.C. § 2256(8)(C). The district court denied both motions and sentenced Stewart to concurrent terms of sixty months, the mandatory minimum. Stewart timely appealed.

II.

First, Stewart argues that he was unlawfully indicted in Case No. 10-20436 because the district court, upon finding a Speedy Trial Act violation in Case No. 09-20415, erred in dismissing the first indictment without prejudice, rather than with prejudice, because the delay in bringing him to trial purportedly caused an "undue hardship" on his personal life.[1] The government responds that under *United States v. Tinklenberg*, 131 S. Ct. 2007 (2011), there was no Speedy Trial Act violation and, thus, no basis for a dismissal with prejudice, because Stewart's May 24, 2010, pretrial motion

---

[1]We have jurisdiction to review the district court's ruling. "Because the dismissal of an indictment without prejudice is an unappealable interlocutory order, appeal of the ultimate disposition of a subsequent indictment is the *only* method by which a defendant may seek this [c]ourt's review of such an order." *United States v. Myers*, 666 F.3d 402, 406 (6th Cir. 2012) (internal quotation marks, brackets, and citations omitted).

to dismiss automatically tolled the running of the speedy-trial clock, regardless of whether it "actually" delayed the trial.  Because "'an appellate court must apply the law in effect at the time it renders its decision[,]'" *Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013) (quoting *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281(1969)), we agree with the government.

"We review *de novo* the district court's interpretation of the Speedy Trial Act and its factual findings for clear error." *United States v. Anderson*, 695 F.3d 390, 396 (6th Cir. 2012).  The Speedy Trial Act provides that a trial "shall commence within seventy days" after the public filing of an indictment, 18 U.S.C. § 3161(c)(1), but includes a number of exclusions from this seventy-day period, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[,]" *id.* § 3161(h)(1)(D).

Stewart filed his motion to dismiss because of a Speedy Trial Act violation on the seventieth day of the speedy-trial clock.  Correctly applying this court's decision in *Tinklenberg*, which held that a pretrial motion falls within the § 3161(h)(1)(D) exclusion only if it "actually cause[s] a delay, or the expectation of a delay, of trial[,]" 579 F.3d at 598, the district court determined that Stewart's motion filing did not toll the speedy-trial clock because it did not "actually" delay the trial, which was scheduled to begin about two weeks later.  And because Stewart would not be brought to trial within the statutory period, the district court found a Speedy Trial Act violation.

In 2011, after Stewart was convicted, but before he was sentenced, the Supreme Court overruled this court's interpretation of § 3161(h)(1)(D), holding that "the filing of a pretrial motion falls within this provision *irrespective* of whether it actually causes, or is expected to cause, delay in starting a trial." *Tinklenberg*, 131 S. Ct. at 2011 (emphasis added); *see also United States v. Ross*, 703 F.3d 856, 877 (6th Cir. 2012) (overruling recognized).   In other words, the speedy-trial clock automatically stops when a defendant files any type of pretrial motion, including a motion to dismiss for a Speedy Trial Act violation.   We apply the Supreme Court's interpretation of § 3161(h)(1)(D) in this appeal. *See Henderson*, 133 S. Ct. at 1126.  Therefore, because

one day remained on the speedy-trial clock, and because Stewart's May 24, 2010, pretrial motion automatically tolled the clock, there was no Speedy Trial Act violation. Accordingly, Stewart was not entitled to dismissal with prejudice. *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) (even in a direct criminal appeal, "we may affirm on any grounds supported by the record, even though different from the grounds relied on by the district court") (internal quotation marks and citation omitted).

III.

Next, Stewart asserts that the district court erred by denying his motion to suppress all evidence obtained from the Sony and Twinhead laptop computers after those computers left the airport because they were allegedly searched and seized in violation of the Fourth Amendment.[2] Stewart argues that his Fourth Amendment rights were violated when his computers were seized at the airport, transported to the ICE office in Detroit approximately twenty miles away from the airport, searched by a certified forensic analyst, and then remained in government custody for five days before a search warrant was obtained. Stewart claims that the continued seizure and search of his computers while away from the airport is an "extended border search" for which the government needed reasonable suspicion of criminal activity to support the continued detention. In addition, he asserts that the government has not articulated specific facts capable of establishing a reasonable suspicion that he engaged in illegal activity.

The government contends that reasonable suspicion was not required because Stewart was not subjected to an "extended border search." Rather, the initial search of the Twinhead computer at ICE's Detroit office—the results of which supplied probable cause for a search warrant—was simply a continuation of the routine border search that began the previous day at the airport. We agree with the government that Stewart was not subjected to an "extended border search."

In considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v.*

---

[2] We have jurisdiction to review this argument for the reasons stated in footnote one.

*Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (internal quotation marks and citation omitted).

The Supreme Court has recognized a broad exception to the Fourth Amendment's requirement of probable cause or a warrant for searches conducted at the border because "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Under that exception, searches of people and their property at the borders are per se reasonable, meaning that they typically do not require a warrant, probable cause, or even reasonable suspicion. *Id.* at 152–53; *United States v. Montoya de Hernandez*, 473 U.S. 531, 537–40 (1985); *United States v. Ramsey*, 431 U.S. 606, 616–18 (1977).

However, many circuit courts have observed that there exists a point where a subject's relationship with the border becomes so attenuated that customs officials lose the right to perform a suspicionless detention and search of a traveler's person or effects. *United States v. Yang*, 286 F.3d 940, 948 (7th Cir. 2002). Accordingly, seven circuits have recognized the so-called "extended border search doctrine." *See id.* at 949; *United States v. Cardenas*, 9 F.3d 1139, 1153 (5th Cir. 1993); *United States v. Caminos*, 770 F.2d 361, 364–65 (3d Cir. 1985); *United States v. Caicedo-Guarnizo*, 723 F.2d 1420, 1422–23 (9th Cir. 1984); *United States v. Garcia*, 672 F.2d 1349, 1366–67 (11th Cir. 1982); *United States v. Bilir*, 592 F.2d 735, 741 (4th Cir. 1979); *United States v. Glaziou*, 402 F.2d 8, 14 n.3 (2d Cir. 1968). Our circuit has not adopted the extended border search doctrine in a published opinion, although we have applied it in an unpublished opinion. *See United States v. McGinnis*, 247 F. App'x 589, 594–95 (6th Cir. 2007).

Distinct from border searches, extended border searches "occur after the actual entry has been effected and intrude more on an individual's normal expectation of privacy. Therefore, extended border searches must be justified by 'reasonable suspicion'

that the subject of the search was involved in criminal activity, rather than simply mere suspicion or no suspicion." *United States v. Alfonso*, 759 F.2d 728, 734 (9th Cir. 1985). The typical extended border search takes place at a location "away from the border where entry is not apparent, but where the dual requirements of reasonable certainty of a recent border crossing and reasonable suspicion of criminal activity are satisfied." *United States v. Guzman-Padilla*, 573 F.3d 865, 878–79 (9th Cir. 2009) (internal quotation marks and citation omitted). Courts applying the doctrine also consider whether law enforcement seized the individual and his luggage sufficiently soon after the crossing to be reasonably confident that the condition of the individual and his luggage did not change after the border crossing. *See, e.g., Yang*, 286 F.3d at 945; *United States v. Espinoza-Seanez*, 862 F.2d 526, 531 (5th Cir. 1988); *Alexander v. United States*, 362 F.2d 379, 382 (9th Cir. 1966). "The key feature of an extended border search is that an individual can be assumed to have cleared the border and thus regained an expectation of privacy in accompanying belongings." *United States v. Cotterman*, 709 F.3d 952, 961 (9th Cir. 2013) (en banc).

In this case, Stewart was not subjected to an extended border search because his laptop computers never cleared the border. Stewart was randomly stopped and searched at the functional equivalent of a border.[3] Although he was cleared to leave after the initial search, his computers were not. The follow-up, non-forensic examination of the Twinhead computer occurred one day later at a field office twenty miles away from the airport. A routine border search of a laptop computer is not transformed into an "extended border search" simply because it is transported twenty miles beyond the border and examined within twenty-four hours of the initial seizure. In the course of conducting a customs examination, property remains in the custody of CBP and may be tested off-site by private testing or by CBP until "cleared" for entry. *See* 19 U.S.C. §§ 1499(a)(1), (a)(2)(B), (b)(1-3), and (c)(1). Notably, it appears that the initial search of the Twinhead computer at ICE's field office (previewing images) was substantially the same as the search of the Sony computer at the airport (previewing images), a search

---

[3]It is undisputed that the Detroit Metropolitan Airport is the functional equivalent of a border for flights arriving from other countries. *See United States v. Lawson*, 461 F.3d 697, 700 (6th Cir. 2006).

that Stewart admits was constitutionally permissible. The government could not search the Twinhead computer at the airport simply because it had no way to power-up the laptop given its dead battery and the need for a foreign power cord converter. That the government had to travel twenty miles and wait twenty-four hours to perform the same search that they could have done the previous day had the proper equipment been present at the airport does not transform a routine border search into an extended border search for which reasonable suspicion is required.

Moreover, the facts in this case are not analogous to those in the extended border search cases. Courts typically apply the doctrine in situations where customs agents returned custody of an item, or where customs agents never took custody of the item at the border, but conducted a subsequent search of that item after the custodian and the items had cleared customs. *See McGinnis*, 247 F. App'x at 595 (defendant and her luggage cleared customs and crossed the border); *Yang*, 286 F.3d at 947 (same); *Cardenas*, 9 F.3d at 1151 (same); *Bilir*, 592 F.2d at 740 n.9 (observing that an extended border search involves persons and effects that have actually crossed the border).

Here, there was no attenuation between Stewart's border crossing and the search of his computers; the government conducted that search *before* clearing them for entry and *before* he could regain an expectation of privacy in that property. *Accord Cotterman*, 709 F.3d at 961–62 (no extended border search when customs agents seized laptop at the border and forensically searched it two days later at an ICE field office 170 miles from the border); *United States v. Arnold*, 533 F.3d 1003 (9th Cir. 2008) (no extended border search when customs agents seized laptop at the border and detained it for two weeks while procuring a search warrant after discovering suspected child pornography during initial search at the border). In sum, the extended border search doctrine does not apply in this case, and the government's border search of Stewart's computers did not violate his Fourth Amendment rights. Accordingly, we affirm the denial of Stewart's motion to suppress, but for reasons different than the district court. *See Davist*, 481 F.3d at 427.

IV.

Stewart argues that the district court erred in denying his Rule 29 motion for judgment of acquittal as it related to count two because the mere cropping and brightening of non-lascivious photographs cannot then convert them into child pornography within the meaning of the child pornography statute and that such depictions are protected by the First Amendment. The government responds that the case law is clear that child pornography can result from image manipulation and that such images are not afforded First Amendment protection. We agree with the government and conclude that the district court properly denied Stewart's motion for judgment of acquittal.

"We review de novo the district court's denial of a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and assess the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (internal quotation marks, footnote and citation omitted). We draw "all reasonable inferences in support of the jury's verdict" and will reverse a judgment for insufficient evidence "only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* (internal quotation marks and citation omitted).

The government charged Stewart under 18 U.S.C. § 2252A(a)(1), which penalizes "[a]ny person who . . . knowingly . . . transports . . . using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography." Under federal law, "child pornography" is defined as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where–
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8). "Sexually explicit conduct" involves, among other things, "lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(A)(v).

The government contended that the cropped and brightened images charged in count two were "lascivious" exhibitions of a minor's genitals. The statute does not define the term "lascivious." However, this circuit has adopted the test for "lasciviousness" from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). *See United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009). The *Dost* test asks the factfinder to evaluate the following six factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* (citing *Dost*, 636 F. Supp. at 832). The primary dispute in the Rule 29 motion was whether a reasonable jury could have found that the cropped images charged in count two were "lascivious" because they were intended or designed to elicit a sexual response in the viewer, the sixth *Dost* factor.

Based upon the trial proofs in this case, we conclude that a rational trier of fact could have found the images charged in count two were lascivious beyond a reasonable doubt. The evidence showed that these images involved minors (a fact that Stewart does

not dispute), the focal point of the images was the childrens' genitalia, the children were partially clothed or nude, and these images were cropped and brightened from larger photographs that largely were innocuous. The jury could have reasonably inferred that the act of image editing, combined with the peculiar composition of the resultant images, demonstrated that the images were designed or intended to elicit a sexual response in the viewer.

Although Stewart contends that the act of image manipulation cannot—as a matter of law—render an image lascivious when the larger image from which it was cropped was undisputably not lascivious, his position ignores the case law which holds that a jury may consider evidence of composition, framing, and focus to support a finding of lasciviousness. *See Brown*, 579 F.3d at 681 ("The fact that the photographs do not include the girls' heads is odd and repeated, and when considered together with the focus on the girls' pubic area, suggests that there may have been an inappropriate or lascivious focus."); *see also United States v. Johnson*, 639 F.3d 433, 440–41 (8th Cir. 2011) (holding that "a reasonable jury could find the video clips were intended to be lascivious" because the video camera involved in the production of the images was angled and zoomed such that "the frame encompassed their nude bodies from their shoulders to below their knees"); *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999) (finding freeze-framed images of video tapes lascivious because "[s]hots of young girls are freeze-framed at moments when their pubic areas are most exposed, as, for instance, when they are doing cartwheels; and these areas are at the center of the image and form the focus of the depiction"). And while Stewart cites *State v. Zidel*, 940 A.2d 255 (N.H. 2008), in support of his perfunctory First Amendment argument, he does not explain why this court should follow the state-law authority or how it even applies here. We decline to craft those arguments for him. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal quotation marks and citation omitted). Moreover, this court has already rejected Stewart's argument that *Zidel* supports a First Amendment challenge to federal child-pornography statutes. *See Doe v. Boland*, 698 F.3d 877, 884 (6th Cir. 2012).

Because Stewart has failed to carry the "very heavy burden" of demonstrating that the evidence failed to provide grounds on which a reasonable jury could have concluded that the images charged in count two met the federal definition of child pornography, we affirm the denial of his motion for judgment of acquittal. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

V.

Next, Stewart claims that the district court's admission of the government's Exhibits 15 and 16 was plain error warranting a reversal of both of his convictions because the hundreds of photographs contained in those exhibits, which the government characterized as child erotica and suspected child pornography, were admitted simply to portray him as an "unseemly pervert" who would knowingly possess child pornography. The government maintains that the admission of these exhibits was not error, plain or otherwise, because they were offered for two permissible purposes: (1) to place the charged images in context of what was found on Stewart's computers, and (2) to prove Stewart's knowledge that the charged images were on his computers. The government has the better argument.

Because Stewart did not object to the admission of the exhibits at issue, we review the district court's evidentiary ruling for plain error. *See Johnson v. United States*, 520 U.S. 461, 466–67 (1997); *United States v. Angel*, 355 F.3d 462, 469 (6th Cir. 2004); Fed. R. Crim. P. 52(b). To prevail on plain-error review, the defendant must show: (1) error, (2) that is clear and obvious, and (3) that affects his substantial legal rights. *Angel*, 355 F.3d at 469. If all three requirements are met, we may exercise our discretion to consider the error, "but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (internal quotation marks and citation omitted). "[T]he plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Phillips*, 516 F.3d 479, 487 (6th Cir. 2008) (internal quotation marks and citation omitted).

Stewart's plain-error challenge fails on the first two elements; he has not shown that the district court clearly erred by admitting Exhibits 15 and 16. The parties frame their dispute around whether the admission of these exhibits violated the "limited context test" announced in *United States v. Brown*, 579 F.3d 672 (6th Cir. 2009). In that case, we held that when determining whether an image is a lascivious depiction of a minor intended or designed to elicit a sexual response in the viewer, the factfinder may consider the "limited context" in which the images were taken, such as "(1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images." 579 F.3d at 683–84 (footnote omitted). The factfinder may not, however, consider factors not directly related to the circumstances surrounding the taking of the images, such as "past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.* at 684.

In this case, the admission of Exhibits 15 and 16 did not violate *Brown*'s "limited context test." First, neither party argues that the images contained in Exhibits 15 and 16 are pornographic. Rather, they depict nude or partially nude children playing at a beach in a natural setting. Thus, the principal due process concern recognized in *Brown*—the danger of admitting uncharged "other pornography" into evidence, which might inflame a jury and lead to a conviction based upon the uncharged images—is simply not present in this case. *See id.* at 685–86. Second, because the charged images in count two were created from some of the images in Exhibit 16, by placing the exhibits side-by-side with the charged images, the jury could see how the larger images were cropped, brightened, and zoomed in on the childrens' pubic areas. This comparison exercise, probative of intent under the sixth *Dost* factor, "can help factfinders . . . resolve . . . whether an image inadvertently focuses on a child's genitalia, or whether it is intended to elicit a sexual response in the viewer." *Id.* at 684. Third, the sheer number of images in Exhibits 15 and 16 showed that Stewart had knowledge that those images were on his

computers, a permissible purpose under Federal Rule of Evidence 404(b).  Accordingly, the district court did not commit plain error by admitting Exhibits 15 and 16.

## VI.

Finally, Stewart argues that he is entitled to a reversal of both convictions because the district court committed plain error by not sua sponte instructing the jury on the statutory definition of an "identifiable minor."  Stewart asserts that without this definition, the jury could have convicted him even if it found that the images were not created, adapted, or modified using images of real minors and instead using images of virtual humans.  Stewart also maintains that the instructions allowed the jury to convict even if the real humans in the photographs were over eighteen years old, but were made to appear as if they were minors.  The government responds that the district court's instructions, taken as a whole and reviewed in the context of the government's theory of the case, provided the jury with a sound basis in law with which to reach a conclusion. We find no plain error in the jury instructions.

Because Stewart did not request the "identifiable minor" instruction below, we review the district court's jury instructions, as a whole, for plain error.  *See Johnson*, 520 U.S. at 466–67; *Angel*, 355 F.3d at 469; Fed. R. Crim. P. 52(b).  "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice."  *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010) (internal quotation marks and citation omitted).  And although Stewart stipulated to the very instructions he now challenges on appeal, arguably inviting the error, we nevertheless exercise our discretion to review his belated complaint.  *See United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997) (holding that even though defendant had stipulated to instructions he later challenged on appeal, the government was just as much at fault in inviting the error, and therefore, plain-error analysis applied); *see also United States v. Savoires*, 430 F.3d 376, 381 (6th Cir. 2005) (observing that invited error does not foreclose relief when the interests of justice demand otherwise, the determination of which is left largely to the discretion of the appellate court).

Stewart does not attack any specific jury instruction as erroneous; he instead challenges an *omission* of an instruction, i.e., the statutory definition of the term "identifiable minor" found at 18 U.S.C. § 2256(9)(A).[4] Such a challenge carries a high bar for relief because "an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial, . . . and an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law." *United States v. Rayborn*, 491 F.3d 513, 521 (6th Cir. 2007) (internal quotation marks and citation omitted).

In this case, the district court did not plainly err in failing to read 18 U.S.C. § 2256(9)(A) to the jury because the issue of whether any of the charged images depicted "identifiable minors" was not in dispute. The government based count one on the child pornography definition of 18 U.S.C. § 2256(8)(A), which does not include the defined term "identifiable minor." Therefore, the term has no relevance with respect to count one. As for count two, defense counsel stated during closing argument that all images charged in this count were pictures of actual minors' genitals, thereby conceding that those images depicted "identifiable minors" under § 2256(9)(A)(i)(I). Given these circumstances, the district court's failure to read, sua sponte, 18 U.S.C. § 2256(9) to the jury does not create a reasonable probability that the outcome of the trial would have been different. *See United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010). Accordingly, Stewart's plain-error challenge falls far short of warranting a reversal of both of his convictions.

## VII.

For these reasons, we affirm the judgment of the district court.

---

[4] 18 U.S.C. § 2256(9)(A) defines an "identifiable minor" as a person:

(i)(I) who was a minor at the time the visual depiction was created, adapted, or modified; or
(II) whose image as a minor was used in creating, adapting, or modifying the visual depiction; and
(ii) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature[.]