NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0369n.06

No. 14-5917

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

May 21, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ROBERT DREW, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.*

KETHLEDGE, Circuit Judge. A jury convicted Robert Drew of attempted armed robbery of a small market and a Kentucky Fried Chicken restaurant. On appeal, Drew argues that the district court should have suppressed the market cashier's identification of his jacket and that insufficient evidence supported his conviction for attempted robbery of the KFC. He also argues that the district court should not have sentenced him under the Armed Career Criminal Act. We reject his arguments and affirm.

I.

Around 9:30 p.m. on December 7, 2012, an African-American man entered a Kentucky Fried Chicken on Highway 64 in Tennessee. He was wearing a blue-and-black-checkered flannel jacket, light-blue jeans, a white thermal shirt, boots, one brown glove, and a dark-blue toboggan hat pulled over his face with eye holes cut out. The robber pointed a black, snub-nosed .38 mm revolver at the cashier, Jesse Baker, and threatened to kill him if he did not hand over the

---

* The Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, sitting by designation.

money in the register. Baker said he could not open the register, so the robber left the store. Baker then called the Memphis police.

About 35 minutes later, an African-American man entered the Hickory Center Market, which is located on Highway 64 about 16 miles from the KFC. He was wearing the same clothes and carrying the same gun as the man who had tried to rob the KFC. He pointed the gun at the cashier, Jerry Harris, and demanded money from the register. Harris ran into the back office, locked the door, called 911, and reported the robbery to the Oakland police. Then the robber left the market.

A customer in the market, James Bolden, watched the robber leave the store and head down the highway on foot. Bolden got in his car, followed the robber, and noted his location. Bolden then drove back to the market and told Oakland police officers—who had arrived at the market two minutes after Harris's 911 call—where the robber had gone.

A few minutes later, two officers found Drew lying on his stomach in the woods along the side of the highway, about 1500 feet from the market. Drew was wearing a blue-and-black-checkered flannel jacket, light-blue jeans, a white thermal shirt, boots, a dark-blue toboggan hat with eye holes, and one brown glove. Twenty minutes later, the officers found a second glove and a black, snub-nosed .38 mm revolver buried in the leaves beneath the spot where they had found Drew.

The officers arrested Drew, took a photo of him from the neck down, and showed it to Harris. Harris confirmed that the jacket in the photo matched the jacket worn by the robber. (The officers did not ask Harris to identify Drew because Harris had not seen the robber's face.) The officers also reviewed the market's surveillance footage, which showed that the robber had worn the same clothes that Drew was wearing when they arrested him.

A few days later, the Oakland police sent the Memphis police photos of Drew's clothes and gun. After viewing surveillance footage from the KFC robbery, the Memphis police confirmed that Drew's clothes and gun matched the KFC robber's clothes and gun.

Drew was charged in federal court with two counts of attempted robbery, in violation of 18 U.S.C. § 1951; two counts of brandishing a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After a four-day trial, a jury convicted Drew of all five counts. The district court later sentenced Drew under the Armed Career Criminal Act to 564 months' imprisonment. This appeal followed.

II.

Drew argues that the district court should have suppressed Harris's testimony about his identification of the robber's jacket. Specifically, he argues that Harris's identification of the jacket violated due process because, Drew says, the procedure that the police used for it was unduly suggestive. But we need not grapple with the question whether the due-process rules governing identification of suspects apply also to identification of clothing. For to obtain any relief, Drew must demonstrate "a reasonable possibility" that Harris's testimony "contributed to [Drew's] conviction." *United States v. Daniel*, 932 F.2d 517, 521 (6th Cir. 1991).

Drew cannot make that showing here. Apart from the clothing identification, the government's evidence included the following: immediately after the robbery, and before Harris saw the neck-down photo of Drew, Harris described the robber, his clothing, and his gun to the police; a few minutes later, officers found Drew—whose build and clothing closely matched Harris's description—lying on top of a gun in the woods near the market; and the market's surveillance footage confirmed that Drew was wearing the same clothes as the robber and

carrying the same gun that the robber used. Thus, the evidence of Drew's guilt was overwhelming.

Drew next argues that insufficient evidence supported his conviction for attempted robbery of the KFC. Evidence is sufficient to support a conviction if, viewing "the evidence in the light most favorable to the prosecution[,] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation marks omitted).

Drew contends that the evidence was insufficient for two reasons. First, he asserts that the KFC cashier's description of the robber differed from Drew's appearance on the night of the robbery: the cashier described the robber as three inches taller and 25 pounds heavier than Drew and said that the robber wore a puffy jacket and carried a silver gun. But Officer Cox of the Memphis police testified that he compared photos of the clothes Drew was wearing at the time of his arrest with photos of the clothes the KFC robber wore as shown on surveillance footage of the robbery. All of the clothes matched exactly, down to the distinct logo over the left breast pocket of the jacket. Cox also testified that the gun found underneath Drew matched the gun used by the KFC robber as shown in the footage. The jurors also viewed the KFC robbery's surveillance footage firsthand, so they saw the robber's clothes and build. Thus, a rational juror could conclude that Drew committed the KFC robbery notwithstanding the discrepancies between the cashier's description of Drew and Drew's appearance.

Second, Drew asserts that the government presented no proof that he could have traveled the 16 miles between the KFC and the Hickory Market on the night of the robberies. But the prosecution need not "rule out every hypothesis except that of guilt." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Here, as shown above, the government introduced ample evidence to

show that Drew committed both robberies. That evidence was strong enough to allow a rational juror to conclude that Drew had found some way of traveling from the KFC to the market.

Finally, Drew argues that, in order for the district court to enhance his sentence under the Armed Career Criminal Act, a jury, rather than a judge, was required to find that he had three prior convictions for violent felonies. As Drew concedes, however, this argument is foreclosed by Supreme Court precedent. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998).

The district court's judgment is affirmed.