

FILED

Apr 26 2019, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane H. Ruemmele
Hayes Ruemmele, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Stephen R. Creason
Chief Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Siebenaler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 26, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-1381 <br><br> Appeal from the <br> Delaware Circuit Court <br><br> The Honorable <br> Marianne L. Vorhees, Judge <br><br> Trial Court Cause No. <br> 18C01-1605-F5-104 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Pursuant to Indiana Code section 35-42-4-4, Brian Siebenaler was charged with four counts of possession of child pornography based on photographs he possessed on a flash drive and four counts of child exploitation based on GIFs

he created from videos and then uploaded to an image-sharing website. All but one of the images show the uncovered genitals of boys; the other one shows one boy fondling another boy underneath his clothing. Siebenaler was found guilty on all eight counts.

[2] Siebenaler now appeals, arguing that the images do not depict "sexual conduct" as required by Section 35-42-4-4. We affirm three of Siebenaler's possession-of-child-pornography convictions because the photographs depict either fondling or nudity that suggests that sexual activity has occurred or is about to occur; we reverse the fourth conviction because it depicts mere nudity. In addition, we affirm two of Siebenaler's child-exploitation convictions because he edited videos into GIFs in such a way that highlighted the boys' genitals; we reverse the other two convictions because those GIFs, although showing uncovered genitals, are not focused on the genitals or otherwise sexually suggestive.

# Facts and Procedural History

[3] On April 4, 2016, Ball State University's computer software indicated that a user was accessing images of nude children on a Russian website on a university-owned computer. Tr. p. 18. In response, Ball State set up a notification system so "that if anybody accessed those .ru websites, a[n alert] would be sent" to the Ball State University Police Department. *Id.* at 19.

[4] At 1:16 p.m. on May 7, Detective Ryan Porkorny was alerted to Room 118 in Robert Bell Building on the Ball State campus. He arrived at Room 118 within

minutes.  When Detective Porkorny looked through the door window, he "saw an empty classroom" with Siebenaler, a Ball State math instructor, at "the front of the classroom at the computer." *Id.*  Detective Porkorny entered the classroom, at which point Siebenaler began "frantically closing windows [on the computer] and pulling up another window." *Id.* at 20.  Detective Porkorny saw an orange and black USB flash drive plugged into the computer.  Detective Porkorny told Siebenaler that he had received an alert that inappropriate content was being accessed in that room and asked Siebenaler to go to the police station for questioning.  Siebenaler agreed.

[5]    During his interview, Siebenaler admitted that he possessed photographs of nude boys on his flash drive and that he uploaded to the image-sharing website "imgsrc.ru" GIFs[1] of nude boys under the username "lostboardies."  Ex. 1 (1:04-1:05); Tr. pp. 30-31.  Siebenaler said that the images he had were mainly of boys ten to fifteen years old but that he also had images of boys five to ten years old.  He said he found the images by going to Google and searching the terms "pantsed" (getting shorts or pants pulled down) and "skinny dipping." Ex. 1 (12:08-12:14, 1:06).  Siebenaler explained that he found the "vast majority" of the videos on YouTube.  *Id.* (1:04-1:05).  He would then create GIFs from these videos and post them to imgsrc.ru.  According to Siebenaler,

---

[1] GIFs (Graphics Interchange Format) are "multiple variations of [a] still image, which c[an] be strung together to create a looping video, like a flipbook."  Lorraine Boissoneault, *A Brief History of the GIF, from Early Internet Innovation to Ubiquitous Relic*, Smithsonian.com (June 2, 2017), https://www.smithsonianmag.com/history/brief-history-gif-early-internet-innovation-ubiquitous-relic-180963543/

the images excited, "mentally aroused," and "amused" him—but not in a sexual way. *Id.* (13:27-15:11, 1:20-1:21). Siebenaler admitted that his behavior "wasn't appropriate" and was "wrong" but said he kept doing it because the images "amused" him. *Id.* (1:06, 1:17). Siebenaler consented to a search of his flash drive, his office in Robert Bell Building, and his home. The police found about 2,000 images on his flash drive. Tr. p. 37. Siebenaler was arrested on May 13.

[6] The State ultimately charged Siebenaler with four counts of Level 5 felony child exploitation (Counts 1-4) and four counts of possession of child pornography, three as a Level 6 felony and one as a Class D felony (Counts 5-8).[2] Specifically, Counts 1-4 alleged that Siebenaler knowingly managed a digitized image of any performance or incident that includes "sexual conduct" (defined as the exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person) by a child under eighteen years old. Ind. Code § 35-42-4-4(a)(4)(C)(i), (b)(1). Counts 5-8 alleged that Siebenaler knowingly possessed digitized images that depict or describe "sexual conduct" by a child who appears to be less than eighteen years of age for Counts 6-8 and less than sixteen years of age for Count 5 and that lack serious literary, artistic, political,

---

[2] The dates for seven of the counts are from 2015 and 2016. Count 5, the Class D felony, alleges that Siebenaler possessed the digitized image in 2011. In 2014, Indiana changed its felony classifications from "classes" (A, B, C, and D) to "levels" (1, 2, 3, 4, 5, and 6). *See* P.L. 168-2014.

or scientific value.  I.C. § 35-42-4-4(d); Ind. Code Ann. § 35-42-4-4(c) (West 2011).[3]

[7] Siebenaler had a bench trial in March 2018.  The trial was brief; the State presented the testimony of three police officers and introduced ten exhibits containing photographs and GIFs to support the eight counts.  *See* Tr. pp. 4-54 (entire trial, from preliminary matters to closing arguments).

[8] Specifically, the State introduced Exhibits 7, 8, 9, and 10 to support the possession-of-child-pornography counts—Counts 5, 6, 7, and 8.  *Id.* at 44.  Exhibits 7-10 are photographs from Siebenaler's flash drive.  *Id.* at 37-38.

[9] Exhibit 7 depicts two nude boys; one boy is older and has gone through puberty while the other boy is younger.  The older boy is standing with the younger boy hanging from his neck.  The younger boy's legs are wrapped around the older boy's hips, with the older boy's turgid penis hanging just below the younger boy's buttocks.[4]

[10] Exhibit 8 depicts two nude boys around ten years old on an inflatable raft in a body of water.  The boy on the front of the raft is lying on his stomach, with his legs hanging down the side of the raft and his buttocks exposed.  The second

---

[3] Again, Count 5 alleges that the possession occurred in 2011.  At that time, the statute provided that the child must be under **sixteen** years of age.  Ind. Code Ann. § 35-42-4-4(c) (West 2011).

[4] The State describes the boy's penis as "erect."  Appellee's Br. p. 17; *see also* Tr. p. 44 (describing the boy's penis as "turgid" or "erect").  Siebenaler does not dispute the State's description but rather asserts that the boys were "not engaged in sexual activity."  Appellant's Br. p. 19.

boy is sitting about a foot behind the first boy's buttocks, with his legs hanging down the side of the raft. The second boy's penis is pointing in the direction of the first boy's buttocks,[5] and one of his hands is on the first boy's lower back/upper buttocks. He is smiling.

[11] Exhibit 9 depicts a nude boy, around the age of ten, standing outside in a grassy area. He is facing the camera from a distance and holding a towel behind him. His penis is visible. He is not looking at the camera but rather down and to the side. There is a second boy, about the same age, who is shirtless and appears to be sitting on the grass with a towel wrapped around his lower half. His back is facing the camera. He is looking to the side as well. It is difficult to determine the distance between the boys, but they could be several feet apart.

[12] Finally, Exhibit 10 depicts a boy standing outside wearing no shirt and shorts and a second boy sitting in front of him on the ground with his hand up the standing boy's shorts. The boys are looking longingly at each other.

[13] The State then introduced Exhibits 13, 14, 15, 16, 17, and 18 to support the child-exploitation counts—Counts 1, 2, 3, and 4. Exhibits 13-18 contain GIFs that Siebenaler created and then posted to imgsrc.ru under the username "lostboardies." The GIFs were password-protected on imgsrc.ru and required a password from Siebenaler to access them.

---

[5] The State describes the boy's penis as "erect." Appellee's Br. p. 17. Again, Siebenaler does not dispute the State's description but asserts that the boys were not engaged in sexual activity.

[14]     Exhibit 13, which was used to support Count 1, *see* Appellant's App. Vol. III pp. 66-67, is a recording of four GIFs that Siebenaler uploaded to his imgsrc.ru account under the heading "Stripped of his speedo." The setting of the GIFs is a beach. All four GIFs focus on the genitals of a boy who is being depantsed. For example, the first GIF depicts two boys, appearing to be between the ages of twelve and fourteen, on the beach. The first boy, wearing shorts and a shirt, is trying to remove the second boy's speedo. The second boy's penis is briefly exposed as the boys struggle for control of the speedo. As the struggle continues, the second boy falls to the sand. The first boy pulls down the second boy's speedo to around his knees and then drags him through the sand by his speedo. The camera zooms in on the second boy, who is lying on his back in the sand with his legs in air, exposing his buttocks and genitals. The GIF ends with a closeup of the second boy's hand dusting off sand from his buttocks. The second GIF picks up where the first GIF ended. The first boy finally succeeds in removing the second boy's speedo. The second boy then sits on his knees in the sand, exposing his genitals. As the camera zooms in on the second boy, his head briefly disappears from the frame. The GIF ends with the second boy still sitting in the sand on his knees with his genitals displayed in the bottom-center of the frame.

[15]     Exhibit 14, which was used to support Count 2, *see id.* at 67, is a recording of six GIFs that Siebenaler uploaded to his imgsrc.ru account under the heading "FKK Scouts." The setting of the GIFs is a campsite on the shore of a body of water. The six GIFs show the genitals of several boys while they are skinny

dipping. For example, the fourth GIF shows a boy who appears to be a teenager running out of the water with his penis bouncing up and down. The GIF ends with a brief freezeframe of his penis pointing straight out and prominently featured in the center of the frame. The fifth GIF appears to pick up where the fourth GIF ended. The teenager's penis is briefly visible in the center of the frame before he turns and starts running in place and then runs into the water with his buttocks in the center of the frame. The GIF then cuts to a side view of a boy, who also appears to be a teenager, in a push-up pose at the edge of the water, his buttocks exposed. The GIF ends as he brings his left leg forward, exposing his genitals in the center of the frame.

[16] Exhibits 15-18, which each contain only one GIF, were used to support Counts 3 and 4. The State did not specify how these four GIFs applied to the two counts. *Id.* at 64.

[17] Exhibit 15 is a recording of a GIF that Siebenaler uploaded to his imgsrc.ru account called "naked prank." In the GIF, multiple boys, who appear to be teenagers, are outside playing in their underwear. One boy's underwear is stolen from him, exposing his penis. He covers his penis with his hands as he tries to get his underwear back. He eventually gets his underwear back.

[18] Exhibit 16 is a recording of a GIF that Siebenaler uploaded to his imgsrc.ru account called "accidental flash." In the GIF, three shirtless boys are dancing in a garage, thrusting their hips. The youngest boy, who is in the front, appears to be three or four years old. The other two boys, who appear to be around ten

years old, are standing behind the younger boy. As the boys are dancing, one of the older boys pulls down his pants, exposing his underwear. The other older boy tries to do the same thing, but he accidentally pulls down his underwear too, briefly exposing his penis. Embarrassed, he quickly pulls up his pants and runs into the house.

[19] Exhibit 17 is a recording of a GIF that Siebenaler uploaded to his imgsrc.ru account called "nice." The GIF shows what appears to be three teenagers on a beach. All of them are wearing shorts. While two of the teenagers are posing for a photo, the third teenager, who is standing behind them, pulls down one of the teenager's shorts, exposing his penis. The teenager quickly pulls up his shorts.

[20] Finally, Exhibit 18 is a recording of a GIF that Siebenaler uploaded to his imgsrc.ru account called "mua bung tut quan—Haivl LeDuc." The GIF shows a boy, who appears to be around twelve years old, outside flexing his muscles for the camera. An older boy is behind him. The older boy sneaks up and pulls down the younger boy's shorts, briefly exposing his penis. The younger boy quickly pulls up his shorts and runs off.

[21] Following trial, the trial court took the matter under advisement. The court later issued an order finding Siebenaler guilty on all eight counts. Appellant's App. Vol. III pp. 63-65.

[22] At the sentencing hearing in May, the judge indicated that she "really did struggle" with this case. Tr. p. 76. The judge noted that there was no "sexual

activity" in any of the images; rather, the images showed "boys being depantsed, losing pants, that type of thing[.]" *Id.* The judge said she "had problems determining whether, as a matter of law, these images were crimes, possessing these images, making these images was actually a crime." *Id.* Accordingly, the judge "invite[d] the Court of Appeals to look at this" case because she believed "that there's room for the Court of Appeals to . . . possibly reverse me on my determination." *Id.* at 76-77. The judge then sentenced Siebenaler to four years on each count, all suspended to probation, to be served concurrently.

[23] Siebenaler now appeals.

# Discussion and Decision

[24] Siebenaler contends that the evidence is insufficient to support his convictions. In order to convict Siebenaler of child exploitation (Counts 1-4) as charged in this case, the State had to prove that he knowingly managed a digitized image of an incident that includes sexual conduct by a child under eighteen years of age. Ind. Code § 35-42-4-4(b)(1); Appellant's App. Vol. II pp. 23-26. In order to convict Siebenaler of possession of child pornography (Counts 5-8) as charged in this case, the State had to prove that he knowingly possessed digitized images that depict or describe sexual conduct by a child who appears to be less than eighteen years of age for Counts 6-8 and less than sixteen years of age for Count 5 and that lacks serious literary, artistic, political, or scientific

value. I.C. § 35-42-4-4(d); Ind. Code Ann. § 35-42-4-4(c) (West 2011);

Appellant's App. Vol. II pp. 27-30. "Sexual conduct" means:

> (A) sexual intercourse;
>
> (B) other sexual conduct (as defined in IC 35-31.5-2-221.5);
>
> (C) exhibition of the:
>
>> (i) uncovered genitals; or
>>
>> (ii) female breast with less than a fully opaque covering of any part of the nipple;
>
> intended to satisfy or arouse the sexual desires of any person;
>
> (D) sadomasochistic abuse;
>
> (E) sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) with an animal; or
>
> (F) any fondling or touching of a child by another person or of another person by a child intended to arouse or satisfy the sexual desires of either the child or the other person.

I.C. § 35-42-4-4(a)(4).

[25] We begin by addressing Siebenaler's conviction on Count 8 (possession of child pornography). Count 8 is based on Exhibit 10, which does not depict uncovered genitals. Rather, Exhibit 10 depicts a boy standing outside wearing

no shirt and shorts and a second boy sitting in front of him on the ground with his hand up the standing boy's shorts. The boys are looking longingly at each other. The State argued at trial that Exhibit 10 depicts sexual conduct based on fondling, not on the exhibition of uncovered genitals. *See* Tr. p. 47 ("The boy has his hand in the other boy's pants and it looks, what appears, to be fondling is going on. I think that's clearly sexual conduct in and of itself, fondling."). While Section 35-42-4-4(a)(4)(C)(i) defines sexual conduct as the exhibition of uncovered genitals intended to satisfy or arouse the sexual desires of any person, Section 35-42-4-4(a)(4)(F) defines sexual conduct as "any fondling or touching of a child by another person or of another person by a child intended to arouse or satisfy the sexual desires of either the child or the other person." In his Appellant's Brief, Siebenaler argues that Counts 5-8 are based on the exhibition of uncovered genitals. But in its Appellee's Brief, the State points out that Siebenaler's conviction on Count 8 is based on fondling pursuant to subsection (a)(4)(F), not the exhibition of uncovered genitals pursuant to subsection (a)(4)(C)(i). Siebenaler does not address the State's argument in his reply brief. Accordingly, because Siebenaler's conviction on Count 8 is based on fondling, we affirm Siebenaler's conviction on Count 8.

[26] As for Counts 1-7, Siebenaler argues that the images depict not "sexual conduct" but rather "mere nudity," which is protected by the First Amendment

and therefore not sufficient to convict him.[6]  Appellant's Reply Br. p. 5.  We review de novo whether an image is constitutionally protected.  *See Brewington v. State*, 7 N.E.3d 946, 955 (Ind. 2014), *reh'g denied*.

[27]  Freedom of speech is generally regarded as one of our most cherished rights in American society.  *Logan v. State*, 836 N.E.2d 467, 470 (Ind. Ct. App. 2005), *trans. denied*.  In *Miller v. California*, the United States Supreme Court held that adult pornography is protected by the First Amendment unless it is obscene.  413 U.S. 15, 23 (1973).  The Court explained that state statutes regulating obscene material must be limited to "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."  *Id.* at 24.

[28]  Almost ten years later, in *New York v. Ferber*, 458 U.S. 747 (1982), the United States Supreme Court held that child pornography, even that which is not obscene under the *Miller* test, is not protected by the First Amendment.  The Court found that the *Miller* test for obscenity was inadequate to address child pornography because it did "not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children."  *Id.* at 761.  The Court therefore adjusted the *Miller* test to apply to child pornography as follows: "A trier of fact need not find that the material

---

[6] Siebenaler suggests in passing that Indiana Code section 35-42-4-4 is "unconstitutionally vague," but he does not develop this argument.  Appellant's Br. p. 22.

appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Id.* at 764. The Court explained that conduct involving child pornography could be criminalized so long as the offense was "limited to works that **visually** depict sexual conduct by children below a specified age" and "the category of 'sexual conduct' proscribed must also be suitably limited and described." *Id.*

[29] Siebenaler is correct that mere nudity is not enough to convict him. That is, "depictions of nudity, without more, constitute protected expression." *Osborne v. Ohio*, 495 U.S. 103, 112 (1990); *Ferber*, 458 U.S. at 765 n.18 ("[N]udity, without more[,] is protected expression."); *id.* at 773 (observing that protected expressions of child nudity could be found in materials "ranging from medical textbooks to pictorials in the National Geographic"); *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011) (describing "mere nudity" as "innocent family photos, clinical depictions, or works of art"); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009) (holding that "[n]udity alone" does not satisfy the definition of "lascivious exhibition of the genitals" (one of the definitions of "sexually explicit conduct" under federal law)[7] and explaining that a photograph is "lascivious" only if it is "sexual in nature" (quotations omitted)); *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008) ("[M]ore than mere

---

[7] Siebenaler concedes that "lascivious exhibition of the genitals" is equivalent to "exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person" under Section 35-42-4-4(a)(4)(C)(i). *See* Appellant's Br. p. 27.

nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive."). With this in mind, we now address Siebenaler's remaining convictions.

# I.    Possession of Child Pornography (Counts 5-7)

[30]   The State used Exhibit 7 to support Count 5. Exhibit 7 depicts an older boy standing with a younger boy hanging from his neck. The younger boy's legs are wrapped around the older boy's hips, with the older boy's turgid penis hanging just below the younger boy's buttocks. Contrary to Siebenaler's claim, Exhibit 7 involves more than mere nudity. The positioning of the boys is sexually suggestive, especially considering the older boy's turgid penis, and implies that sexual activity between the boys has occurred or is about to occur.[8] We therefore affirm Siebenaler's conviction on Count 5.

[31]   The State used Exhibit 8 to support Count 6. Exhibit 8 depicts two nude boys on an inflatable raft in a body of water. Exhibit 8 also involves more than mere nudity. The position of the boys is highly suggestive of anal intercourse and implies that sexual activity between the boys has occurred or is about to occur. We therefore affirm Siebenaler's conviction on Count 6.

---

[8] As explained above, Count 5 requires the image to depict or describe sexual conduct by a child who appears to be less than sixteen years of age (as opposed to less than eighteen years of age). Siebenaler makes no argument about the boys' ages.

[32]    Finally, the State used Exhibit 9 to support Count 7. Exhibit 9 depicts a nude boy standing outside in a grassy area with a towel behind him. There is a second boy sitting on the grass with a towel wrapped around his lower half. We agree with Siebenaler that Exhibit 9 depicts mere nudity. Although the State argued at trial that Exhibit 9 shows that the boys were "about to engage in oral sex" because the sitting boy's head is at the level of the standing boy's penis, Tr. p. 46, we cannot agree with the State's characterization of this image. First, it is hard to tell the distance between the boys. Second, the boys are not touching each other or even looking at or acknowledging each other; rather, they just happen to be in the same photograph. We therefore reverse Siebenaler's conviction on Count 7.

## II.   Child Exploitation (Counts 1-4)

[33]    Exhibits 13-18 are recordings of GIFs that Siebenaler created from videos and then uploaded to his imgsrc.ru account. Several courts have held that cropping or editing an otherwise innocent image can result in child pornography. *See State v. Bolles*, 541 S.W.3d 128, 136 (Tex. Crim. App. 2017) (collecting cases). For example, in *United States v. Stewart*, 729 F.3d 517 (6th Cir. 2013), the Sixth Circuit held that child pornography can result from image manipulation and that such images are not afforded First Amendment protection. In that case, the court found that "[t]he jury could have reasonably inferred that the act of image editing, combined with the peculiar composition of the resultant images"—a close-up of a child's genitals—"demonstrated that the images were designed or intended to elicit a sexual response in the viewer." *Id.* at 527.

[34]    In addition, in *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999), the Eighth Circuit held that freeze-framed images of videotapes were "lascivious" because:

> Shots of young girls are freeze-framed at moments when their pubic areas are most exposed, as, for instance, when they are doing cartwheels; and these areas are at the center of the image and form the focus of the depiction. . . . [The defendant] argues that an otherwise innocent video tape of nude children cannot be made into a lascivious exhibition of the genitals by freeze-framing. We disagree. By focusing the viewer's attention on the pubic area, freeze-framing can create an image intended to elicit a sexual response in the viewer. The "lascivious exhibition" is not the work of the child, whose innocence is not in question, but of the producer or editor of the video.

*Id.* at 790.

[35]    The State used Exhibits 13 and 14 to support Counts 1 and 2. We have little difficulty concluding that the GIFs in Exhibits 13 and 14 depict "sexual conduct" and not "mere nudity." It is true that the activities in the GIFs show boys depantsing one another and skinny dipping—activities that are not necessarily sexually suggestive. However, when Siebenaler created these GIFs from videos, he edited them in such a way that highlights the boys' genitals. Oftentimes, the GIFs start and end with genitals. For example, in Exhibit 13, the first GIF ends with a closeup of a nude boy lying on his back in the sand with his legs in the air and his genitals and buttocks exposed. The second GIF picks up where the first one left off and then ends with the boy sitting on the sand on his knees with his genitals displayed in the bottom-center of the frame. In Exhibit 14, the fourth GIF shows a nude boy running out of the water with

his penis bouncing up and down; the GIF ends with a brief freezeframe of the boy's penis pointing straight out and prominently featured in the center of the frame. The fifth GIF picks up where the fourth GIF ended and then cuts to a side view of a nude boy in a push-up pose at the edge of the water. The fifth GIF ends as the boy brings his left leg forward, exposing his genitals in the center of the frame. By editing the videos into GIFs that focus the viewers' attention on the boys' genitals, Siebenaler created GIFs "intended to satisfy or arouse the sexual desires of any person." *See Stewart*, 729 F.3d at 527; *Horn*, 187 F.3d at 790. We therefore affirm his convictions on Counts 1 and 2.

[36] Exhibits 15-18, which the State used to support Counts 3 and 4, are markedly different from Exhibits 13 and 14. The GIFs in Exhibits 15-18 depict boys getting depantsed and then quickly covering themselves or pulling up their pants or shorts. Unlike the GIFs in Exhibits 13 and 14, these GIFs are not focused on the genitals or sexually suggestive. In fact, in some of the GIFs, the genitals are barely visible. In addition, none of these GIFs end with genitals. We therefore reverse Siebenaler's convictions on Counts 3 and 4.

[37] We affirm Siebenaler's convictions on Counts 1, 2, 5, 6, and 8 and reverse his convictions on Counts 3, 4, and 7.

[38] Affirmed in part, reversed in part.

Mathias, J., and Crone, J., concur.