NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0481n.06

No. 24-1234

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 20, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| HASNA BASHIR IWAS, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
|  | ) | |

Before:  MOORE, BUSH, and DAVIS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  A jury convicted Hasna Iwas, a registered pharmacist, of twenty-three counts of unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), two counts of aiding and abetting in violation of the same, and one count of conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(b)(1)(C).  The district court sentenced Iwas to 100 months' imprisonment.  On appeal, Iwas challenges the district court's § 841(a)(1) elements instruction and deliberate-ignorance instruction.  Because we conclude that, under binding circuit precedent, the district court did not abuse its discretion in giving a deliberate-ignorance instruction and did not plainly err in instructing the jury regarding the appropriate *mens rea* for the unlawful-distribution charges, we **AFFIRM**.

## I. BACKGROUND

Iwas owned and operated Beacon Pointe Pharmacy in Grosse Pointe Park, Michigan. R. 183 (Trial Tr. Vol. 11 at 18–19) (Page ID #2019–20). Between August 2013 and November 2018, Iwas filled nearly 1,300 forged prescriptions[1] for controlled substances—primarily oxymorphone (Opana), oxycodone with acetaminophen (Percocet), promethazine with codeine, and alprazolam (Xanax). R. 258 (Trial Tr. Vol. 3 at 57, 63–65) (Page ID #3844, 3850–52). The forged prescriptions were issued in the names of fifty-eight "patients" associated with one individual, Rochelle Edwards. *Id.* at 110 (Page ID #3897). These included prescriptions for individuals who were dead, *id.* at 83–85 (Page ID #3870–72); R. 168 (Trial Tr. Vol. 5 at 21–23) (Page ID #1182–84), and others who were incarcerated, R. 258 (Trial Tr. Vol 3 at 86–89) (Page ID #3873–76); R. 170 (Trial Tr. Vol. 7 at 22–23) (Page ID #1505–06). Thirteen of the patients used the same address, R. 258 (Trial Tr. Vol. 3 at 111) (Page ID #3898), for an apparently abandoned house, R. 168 (Trial Tr. Vol. 5 at 128) (Page ID #1289). The forged prescriptions were labeled as issued by eight different prescribers to whom patients "migrate[d]" in groups. R. 258 (Trial Tr. Vol. 3 at 109) (Page ID #3896).

Rochelle Edwards, sometimes accompanied by an associate, would bring into Beacon Pointe batches of prescriptions for several patients at a time. *See* R. 169 (Trial Tr. Vol. 6 at 66–67, 81–82) (Page ID #1405–06, 1420–21). Some of the patients for whom the prescriptions were

---

[1]At trial the purported prescribers (or their agents) testified that they did not issue the prescriptions. R. 166 (Trial Tr. Vol. 4 at 21–37) (Page ID #1014–30) (Dr. Fuad Rahimee); *id.* at 41–57 (Page ID #1034–50) (Dan Oddo on behalf of Dr. Ara Bush); *id.* at 66–93 (Page ID #1059–86) (Tiffanie Zielinski on behalf of Dr. Usha Singhi); *id.* at 96–106 (Page ID #1089–99) (Jessica Youmans on behalf of Dr. Ronald Kufner); *id.* at 109–30 (Page ID #1102–23) (Jessiedeep Multani); R. 168 (Trial Tr. Vol. 5 at 12–35) (Page ID #1173–96) (Dr. Hussein Darwiche); *id.* at 50–74 (Page ID #1211–35) (Dr. Renato Roxas); *id.* at 78–90 (Page ID #1239–51) (Dr. Barry Braver); *see also* R. 259 (Trial Tr. Vol. 10 at 174–77) (Page ID #4109–12) (stipulation regarding Dr. Bush).

allegedly intended had never been to Beacon Pointe. *See, e.g.*, *id.* at 121–23 (Page ID #1460–62). At least one patient accompanied Ms. Edwards to Beacon Pointe once but did not herself interact with Iwas or other pharmacy personnel, and Ms. Edwards subsequently brought in prescriptions in the patient's name without the patient's knowledge. R. 168 (Trial Tr. Vol. 5 at 136–44) (Page ID #1297–1305). Some of the forged-prescription patients had, at some time, filled prescriptions at Beacon Pointe that were covered by Medicaid with no or a nominal co-pay, yet other times paid hundreds or thousands of dollars in cash for prescriptions. *See, e.g.*, R. 169 (Trial Tr. Vol. 6 at 35–36) (Page ID #1374–75).

The forged prescriptions contained "red flag" indicators that they may have been illegitimate, such as, in some instances, "fuzzy" logos, information appearing in different font types and/or colors, and off-center text. R. 170 (Trial Tr. Vol. 7 at 55–58) (Page ID #1538–41). Some of the forged prescriptions contained on their faces incorrect phone numbers and addresses for the named prescribers; labels on the backs that were printed and affixed by Beacon Pointe Pharmacy staff, however, displayed the phone numbers and addresses, indicating that the pharmacy system contained the correct information. *See, e.g.*, R. 166 (Trial Tr. Vol. 4 at 33–34) (Page ID #1026–27); R. 258 (Trial Tr. Vol. 3 at 101–02) (Page ID #3888–89). Other forged prescriptions displayed the correct phone numbers for the prescribers. *See, e.g.*, R. 166 (Trial Tr. Vol. 4 at 69–70, 74–75) (Page ID #1062–63, 1067–68). In some instances, Iwas handwrote notes on the back of prescriptions indicating that they had been verified with the prescriber. *See, e.g.*, *id.* at 77–80 (Page ID #1070–73); R. 169 (Trial Tr. Vol. 6 at 71–73) (Page ID #1410–12); R. 183 (Trial Tr. Vol. 11 at 69–70, 81) (Page ID #2070–71, 2082). The prescribers or their agents testified that those prescriptions were not in fact verified, and in most cases verification would have been

impossible because the supposed patient was not actually a patient of the prescriber. *See, e.g.*, R. 166 (Trial Tr. Vol. 4 at 33, 73–81, 123) (Page ID #1026, 1066–75, 1116); R. 168 (Trial Tr. Vol. 5 at 28–33) (Page ID #1189–94); R. 259 (Trial Tr. Vol. 10 at 174–77) (Page ID #4109–12). Video surveillance footage from Beacon Pointe depicts Iwas or her technician leaving pharmacy labels off of prescription bottles for Ms. Edwards or her associate Arika Kidd and subsequently shredding the labels. R. 259 (Trial Tr. Vol. 10 at 114–16) (Page ID #4049–51). Video depicts Ms. Iwas, on another occasion, peeling the pharmacy label off of a bottle before handing it to Ms. Kidd. *Id.* at 117 (Page ID #4052).

Separate from the Rochelle Edwards-related forgeries, Iwas also filled many illegitimate prescriptions issued by Dr. Otis Crawford. Dr. Crawford wrote controlled-substance prescriptions for patients whom he never examined, *see, e.g.*, R. 172 (Trial Tr. Vol. 8 at 99–110) (Page ID #1730–41), and, sometimes, for patients who had never even been to his clinic, *see, e.g.*, R. 173 (Trial Tr. Vol. 9 at 23) (Page ID #1803). Iwas filled controlled-substance prescriptions from Dr. Crawford, despite acknowledging in a text, "I always don't feel good filling his scripts." *Id.* at 47 (Page ID #1827).

Finally, a drug audit conducted by the DEA revealed that thousands of pills delivered to Beacon Pointe were apparently missing, including over 74,000 oxycodone 30mg pills, (representing 30% of Beacon Pointe's total supply of oxycodone), over 10,000 hydrocodone with acetaminophen (Norco) pills, and over 28,000 Xanax 2mg pills. R. 259 (Trial Tr. Vol. 10 at 91–95) (Page ID #4026–30). Supplier invoices indicate that these pills were delivered to the pharmacy, but the pills were neither located in the pharmacy nor accounted for in any prescription

of record. *Id.* at 87–95 (Page ID #4022–30). Testifying at trial, Iwas was unable to provide any explanation for the missing pills. R. 183 (Trial Tr. Vol. 11 at 113) (Page ID #2114).

Iwas was charged with and proceeded to a jury trial on one count of conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, twenty-five counts of unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), and one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1). *See* R. 159 (Stipulated Jury Copy of Second Superseding Indictment & Mot. & Order Dismissing Counts 18–25 & 36 of the Second Superseding Indictment) (Page ID #788–803). Iwas was convicted on all counts except the drug-involved premises charge. R. 223 (Judgment at 1) (Page ID #3137). The district court sentenced Iwas to a term of imprisonment of 100 months. *Id.* at 3 (Page ID #3139). Iwas now appeals her conviction.

## II. ANALYSIS

Iwas raises several issues with the district court's jury instructions. She contends that the trial court abused its discretion by giving the jury a so-called deliberate-ignorance instruction. Iwas further argues that the instructions failed to capture the *mens rea* required to sustain a conviction under 21 U.S.C. § 841 as explained by the Supreme Court in *Ruan v. United States*, 597 U.S. 450 (2022). Finally, she asserts that the instructions did not adequately convey the meaning of "unauthorized" as that term applies to a pharmacist dispensing controlled substances pursuant to prescriptions issued by others.[2]

---

[2]Iwas additionally argued in her opening brief that the incorporation in the jury instructions of language from regulations violated the separation of powers. *See* D. 29 (Appellant's Br. at 17–23). She abandons that argument in her reply. D. 39 (Reply Br. at 14) ("Ms. Iwas concedes that, given the state of the case law as it exists today, she cannot establish that the error is 'plain.'").

## A. Deliberate-Ignorance Instruction

We first address the deliberate-ignorance instruction given its centrality to the *Ruan* analysis below. The parties disagree as to whether Iwas sufficiently objected to the district court's inclusion of the deliberate-ignorance instruction. Iwas argues she did, in which case we review for abuse of discretion. *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010). The Government argues that Iwas's objection in the district court was on grounds other than those she now asserts before this court and urges us to review for plain error. We need not address this disagreement because we conclude that Iwas's challenge to the deliberate-ignorance instruction fails under the more lenient abuse-of-discretion standard. *Cf. United States v. Pacheco*, Nos. 23-5762/5819, 2025 WL 2060779, at *4 (6th Cir. July 23, 2025).

The district court instructed the jury as follows:

> (1) Next, I want to explain something about proving a defendant's knowledge.

> (2) No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the prescriptions she filled were not legitimate, then you may find that she knew they were fraudulent.

> (3) But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the prescriptions were not legitimate, and that the defendant deliberately closed her eyes to what was obvious. Carelessness, or negligence, or foolishness on her part is not the same as knowledge, and is not enough to convict. This, of course, is all for you to decide.

R. 177 (Jury Instructions at 20) (Page ID #1942). "We have stated that a deliberate ignorance instruction is warranted to 'prevent[] a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct.'" *United States v. Geisen*, 612 F.3d 471, 485–86 (6th Cir. 2010) (alteration in original) (quoting *United*

*States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983)). As with all instructions, a deliberate-ignorance instruction should be given only when reasonably raised by the evidence. *United States v. Mitchell*, 681 F.3d 867, 877 (6th Cir. 2012). That is, "[a] deliberate ignorance instruction is properly given . . . when there is evidence supporting an inference of deliberate ignorance." *Geisen*, 612 F.3d at 486.

The evidence in the instant case was sufficient to support an inference of deliberate ignorance. Iwas testified that she did not notice the red flags that were visible on the forged prescriptions themselves and in the patients' filling of them. Although she recognized the warning signs in hindsight, she claimed that she was so busy at the time that they escaped her attention. Evidence suggests, however, that she intentionally turned a blind eye to indications of forgery. Iwas testified that her general practice in verifying a prescription was to call the phone number on the face of the prescription. Doing so defies logic—if a prescription is fake, it is reasonable to assume that the phone number provided is too. Indeed, several of the forged prescriptions displayed an incorrect number for the prescriber on the front, but the correct phone number on the back (via the label printed from the pharmacy system). Some such prescriptions contained handwritten notes indicating that Iwas verified the prescriptions, which Iwas testified she did by calling the phone number on the front. If Iwas had called the phone number stored in her own pharmacy system, she presumably would have learned that the prescriptions were false.

Additionally, Iwas was aware that Rochelle Edwards and other Edwards-associated patients at least sometimes had insurance coverage for their prescriptions. Iwas even once ran Ms. Edwards's MAPS (Michigan Automated Prescription System) report, with the reason indicated on the report for her having done so being, "Patient paying cash for prescriptions when they are

insured." Yet Iwas accepted thousands of dollars in cash payments from Ms. Edwards for other prescriptions. Because the parties presented evidence implicating their opposing theories of Iwas's innocent ignorance on the one hand and deliberate ignorance on the other, "it was certainly within the sound discretion of the district court to address that evidence and the competing theories in its instructions." *Mitchell*, 681 F.3d at 879; *see also United States v. Stanton*, 103 F.4th 1204, 1213 (6th Cir. 2024). Iwas asks us to revisit our holding in *United States v. Daneshvar*, 925 F.3d 766, 782 (6th Cir. 2019), and similar cases that a deliberate-ignorance instruction, even if factually unsupported, is harmless error. D. 29 (Appellant's Br. at 29). However, given that there was factual support for the deliberate-ignorance instruction here, the court need not revisit its holding, and, in any event, "only the Supreme Court or our en banc court can overrule our decisions." *Post v. Trinity Health-Mich.*, 44 F.4th 572, 580–81 (6th Cir. 2022).

## B. The Elements Instruction and *Ruan*

We next address Iwas's argument that the jury instructions failed to capture the *mens rea* element of the unlawful-distribution charges as required under *Ruan*. Iwas failed to object to the elements instruction before the district court. Iwas protests that she did preserve her objection, pointing us to the district court's statement during trial that "[t]he parties do not agree on a jury instruction for the substantive counts brought under 21 U.S.C. § 841 . . . . What the parties dispute is what it means for the distribution or dispensation to be unauthorized." D. 39 (Reply Br. at 1) (quoting R. 183 (Trial Tr. Vol. 11 at 232–33) (Page ID #2233–34)). This statement by the district court does not evince an objection from Iwas that was "specific," nor does it adequately state the "grounds" for the supposed objection. *See* FED. R. CRIM. P. 30(d). We therefore review Iwas's unpreserved objection for plain error. *United States v. Xiaorong You*, 74 F.4th 378, 391 (6th Cir.

2023). "Regarding jury instructions, 'plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Hofstetter*, 80 F.4th 725, 730 (6th Cir. 2023) (quoting *United States v. Stewart*, 729 F.3d 517, 530 (6th Cir. 2013)).

Section 841(a)(1) states, "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). In *Ruan*, the Supreme Court held that "§ 841's 'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause." 597 U.S. at 457, 468. To obtain a conviction under the statute, therefore, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* It is not enough that the defendant knowingly or intentionally dispensed the controlled substance. *Id.* at 459 ("[I]t is the fact that the doctor issued an *unauthorized* prescription that renders his or her conduct wrongful, not the fact of the dispensation itself.").

The district court in this case gave the following elements instruction for § 841:

In order to find the defendant guilty of a violation of 21 U.S.C. 841(a)(1), the government must prove beyond a reasonable doubt each of the following elements:

(1) That the defendant knowingly or intentionally distributed to another person a controlled substance by filling a prescription in the name of the person listed in a particular count, for the controlled substance alleged in that count, either personally or in concert with an employee or agent;

(2) That the particular prescription was unauthorized, that is, not issued for a legitimate medical purpose in the usual course of professional practice; and

(3) That the defendant knowingly or intentionally distributed an unauthorized prescription, that is, one not issued for a legitimate medical purpose in the usual course of professional practice.

9

R. 177 (Jury Instructions at 27) (Page ID #1949). The district court then defined several terms. As relevant here, the court instructed, "The term 'knowingly' means the defendant understood the nature of her conduct and did not act through ignorance, mistake, or accident. Carelessness, negligence, incompetence, or foolishness on her part are not the same as knowledge and are not enough to find her guilty on this count. However, a pharmacist may not intentionally close her eyes and thereby avoid actual knowledge that she is filling an invalid prescription." *Id.* at 28 (Page ID #1950).

This court has already decided several cases in the wake of *Ruan*, and circuit precedent dictates our decision here. In *United States v. Anderson*, we held that the district court sufficiently expressed the requisite *mens rea* for a § 841(a)(1) conviction under *Ruan* by "juxtapos[ing]" the knowledge required by the statute with "carelessness, negligence, or foolishness" in a deliberate-ignorance instruction. 67 F.4th 755, 766 (6th Cir. 2023) (citation modified). The district court in *Anderson* had instructed the jury that the elements of the crime were "[f]irst, the defendant knowingly or intentionally dispensed or distributed a Schedule II controlled substance . . . ; and, Second, that the defendant, Dr. Anderson, prescribed the drug without a legitimate medical purpose and outside the course of professional practice." *Id.* As to the meaning of "knowledge," the district court in *Anderson* explained,

> Although knowledge of the defendant cannot be established merely by demonstrating he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the controlled substance was distributed or dispensed without a legitimate medical purpose in the usual course of professional practice, then you may find the defendant knew this was the case. . . .

10

> But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed other than for a legitimate medical purpose while acting in the usual course of professional practice, and that the defendant deliberately closed his eyes to what was obvious. *Carelessness, or negligence, or foolishness on his part are not the same as knowledge and are not enough to find him guilty on this count.*

*Id.* Reviewing for abuse of discretion on appeal, we concluded that the instructions "appear[ed] to comport with *Ruan*" "by referring continuously to" Anderson's knowledge, "direct[ing] the jury's attention to Anderson's subjective mindset in issuing the prescriptions," and "emphasizing" with the deliberate-ignorance instruction "that . . . no lesser level of culpability" than knowledge was sufficient. *Id.*

Bound by *Anderson*, we reach the same conclusion in the instant appeal. As in *Anderson*, the district court here "juxtaposed knowledge with lesser levels of culpability." *United States v. Bauer*, 82 F.4th 522, 532 (6th Cir. 2023); *see also Stanton*, 103 F.4th at 1213. In defining "knowingly," the district court instructed the jury that "[c]arelessness, negligence, incompetence, or foolishness on [Iwas's] part are not the same as knowledge and are not enough to find [Iwas] guilty on" the § 841(a)(1) counts. R. 177 (Jury Instructions at 28) (Page ID #1950). The court further underscored this contrast in its separate deliberate-ignorance instruction, which was very similar to that given in *Anderson*. *Id.* at 20 (Page ID #1942). Under *Anderson*, and taken as a whole, the instructions in this case were sufficient.

## C. Usual-Course-of-Professional-Practice Instructions

Finally, Iwas appears to take issue with the inclusion of "pharmacy" in the district court's definitional instruction for "usual course of professional practice." That paragraph states in full, "The term 'usual course of professional practice' is defined by reference to an objective standard of medical *and pharmacy* practice generally recognized and accepted by the medical *and*

11

*pharmacy* professions in the United States. This standard is not violated by mere negligence. This standard is breached when the doctor acts contrary to what a legitimate doctor would do in a medically valid effort to help patients." R. 177 (Jury Instructions at 28–29) (Page ID #1950–51) (emphasis added). Iwas failed to object to this instruction. *See* R. 260 (Trial Tr. Vol. 12 at 37–38) (Page ID #4182–83). We therefore review for plain error. *You*, 74 F.4th at 391.

The parties go back and forth about whether a pharmacist's failure to comply with his or her own professional pharmacy standards in filling an otherwise legitimate prescription is sufficient to sustain a conviction under § 841. We need not reach that issue here because the instructions taken as a whole conveyed that the prescription itself must have been improper. The paragraph directly before the "usual course of professional practice" paragraph states, "A prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist to not fill an unauthorized prescription." R. 177 (Jury Instructions at 28) (Page ID #1950).

Taken together, the "legitimate medical purpose" and "usual course of professional practice" paragraphs make clear that the prescription must have been illegitimate with reference to the prescriber. The stray references to "pharmacy" in the latter paragraph do not dictate otherwise, especially in light of the unambiguous focus on doctors in the sentence that immediately follows. *Id.* at 28–29 (Page ID #1950–51) ("This standard is breached when the doctor acts contrary to what a legitimate doctor would do in a medically valid effort to help patients."). Furthermore, the elements instructions themselves define "unauthorized" as "not issued for a

legitimate medical purpose in the usual course of professional practice." *Id.* at 27 (Page ID #1949). "Issued" extends to both prepositional phrases—"for a legitimate medical purpose" and "in the usual course of professional practice." Thus, the instructions advise that an unauthorized prescription is one "not issued . . . in the usual course of professional practice." Prescribers—not pharmacists—issue prescriptions. The elements therefore tie the usual course of professional practice to the prescriber. This defeats Iwas's alleged error.

Additionally, Iwas concedes in her reply brief that she cannot establish plain error based on the district court's incorporation in the jury instructions of 21 C.F.R. § 1306.04's use of the terms "usual course of professional practice" and "legitimate medical purpose." D. 39 (Reply Br. at 14). Given Iwas's concession, and that the instructions were proper in their own right, Iwas cannot show error relating to these jury instructions.

## III. CONCLUSION

The district court did not abuse its discretion in giving the deliberate-ignorance instruction, nor did it clearly err in instructing the jury regarding the elements under § 841(a)(1). Accordingly, we **AFFIRM** the judgment of the district court.